## Franks v. Commonwealth.

(Decided February 23, 1915.)

### Appeal from Pendleton Circuit Court.

1. Criminal Law—Breaking Into Warehouse—Evidence.—In a prosecution for breaking into a warehouse with intent to steal therefrom, held, that a verdict of guilty was not flagrantly against the evidence.

2. Evidence—Criminal Law—Proof of Other Crime.—Where defendant, who was not a liquor dealer, was charged with stealing whiskey from a warehouse, evidence that he sold whiskey to a certain person shortly after the alleged theft, was admissible as tending to show defendant's possession of the whiskey.

3. Evidence—Experts.—The admission of the testimony of an expert witness, whose qualification as such was doubtful, held not prejudicial in view of the many circumstances tending to establish defendant's guilt.

WESLEY M. RARDIN for appellant.

JAMES GARNETT, Attorney General, and CHAS. H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Defendant, Bert Franks, was convicted of the crime of feloniously breaking into a warehouse with intention to steal therefrom, and given a sentence of from two to four years in the State penitentiary. He appeals.

According to the evidence for the Commonwealth, the frame building owned by the Old Tub Fowler Distilling Company, and located on the corner of Upper Mill and Water Streets, in Falmouth, was broken into and a quantity of whiskey taken from a barrel. In the room with the barrel were some jugs. One of the jugs held five gallons and had a peculiar mark on it. The other jugs held three gallons. The breaking occurred some time between Thursday night and early Friday morning. Thomas Teegarden saw two men in front of the distillery just before daylight on Friday morning. He was unable to identify the men, but one of them was about the size of the defendant. Mrs. Lydia Wedding saw two men on the same morning going towards the railroad with something in their hands which "carried kinder heavy." Mrs. Lou McCarty saw the defendant and Hugh Courtney at her house early Friday morning. They had two baskets with them, and informed her that they contained whiskey. She told them to take the baskets out; that she might be arrested. They told her to keep her mouth shut and nobody would know anything about it. They also said that if the fellow who saw them followed them over there they would kill him. They called him Teegarden. On the Sunday morning following Tom Bell saw the defendant and Hugh Courtney at Coleman Springs. He was looking for Lou McCarty and also for some whiskey. He and McCarty joined defendant and Courtney on the creek bank. They asked for whiskey, and defendant and Courtney produced three pint bottles. Witness gave $1.50 to Lou McCarty, who then handed it over to de-

fendant. The officers arrested Bert Franks and Hugh Courtney on Sunday afternoon following the breaking. When the officers came up the defendant was breaking some pint bottles which, from the smell, had contained whiskey. Nearby they found a three-gallon jug of whiskey concealed in the river. About a half-mile .distant a five-gallon jug was found in Foley's warehouse. The five-gallon jug was identified by Clark Wilson, the company's secretary, as being the one which was in the company's building. Witness was unable to say that the three-gallon jug was one of the jugs that was in the office, but the jugs there were like the three-gallon jug. Lou McCarty saw defendant and Courtney on Saturday morning, and again on Sunday morning. They came to his house Sunday morning and woke him up. He went up the river with them. They told him they had some whiskey. They had a jug full and several pint bottles. Tom Bell, who had been drinking whiskey for twenty years, and who swore that he was able to determine the brand of whiskey by its taste, testified that the whiskey in the possession of defendant and Courtney was the Old Tub Fowler brand. On cross-examination witness stated that he did not know whether Tub Fowler whiskey was a sour mash or a sweet mash whiskey. It was a hand-made whiskey, however. Hand-made whiskey has a strong taste that burns when you drink it. Steam whiskey does not burn. He further stated that he only knew whiskey as being good and bad, and did not know the different brands of whiskey made by different manufacturers. On being asked if he pretended to say, without knowing in advance, whether or not he could tell Obed Cowles' whiskey from Ducker's, and Ducker's from Chipman's, and Chipman's from the other two, he replied, "Not that I reckon."

The defendant denied being at Lou McCarty's house early Friday morning. He also denied having anything to do with breaking into the warehouse. He further swore that he went home Thursday evening between six and seven o'clock, and remained there until seven-thirty the next morning. His father and mother, who slept in the same room with him, corroborate this statement. Fred Parker, who joined the party Sunday morning, states that he did not see the whiskey. When he got there "they had done the work."

It is insisted that the verdict is not only flagrantly against the evidence, but that the evidence was insufficient to take the case to the jury. This is not a case where the only evidence against the defendant was the fact that he was in possession of the whiskey, and the whiskey was not identified as being the whiskey taken from the distillery building. It is a case where two men were seen near the distillery building just before daylight on Friday morning. One of them was about the size of defendant. These two men were carrying something heavy. Just before daylight two men appeared at Mrs. McCarty's. They were carrying baskets. They stated that they contained whiskey. One of them remarked that if the man who saw them followed them over there they would kill him. They called the man Teegarden. Teegarden is the man who saw them near the building. In addition to these facts they were together on Sunday morning, had several pints of whiskey in their possession, and nearby was a three-gallon jug which resembled the jug taken from the warehouse. When the officers approached defendant began breaking bottles containing whiskey. On the other hand, defendant claims that he had no whiskey, but the whiskey belonged to McCarty. He and his mother and father also say that he was at home on the night the whiskey was stolen. If the witnesses for the Commonwealth are to be believed, the circumstances to which they testify make out a strong case against the defendant. On the other hand, if he and his father and mother are to be believed, he could not have been present when the warehouse was broken into, and he was not, therefore, guilty of the crime of breaking into the warehouse. Under the circumstances, it was for the jury to say whether or not they believed defendant and his witnesses or the witnesses for the Commonwealth, and not being able to say that its finding was flagrantly against the evidence, we are not at liberty to disturb the verdict.

It is next insisted that the court erred in permitting the Commonwealth to prove that defendant sold whiskey to Tom Bell. It is argued that evidence of a violation of the local option law is not competent to prove the offense of breaking into a warehouse with intent to steal therefrom. This evidence was not admitted for the purpose of showing that defendant was probably guilty of the offense with which he was charged because he was

guilty of another offense. The possession by the defendant, who was not a liquor dealer, of a large quantity of whiskey was certainly a circumstance pointing to the guilt of the defendant, in the absence of reliable evidence as to how his possession came about. The fact that he sold the whiskey not only tended to show his possession, as opposed to his claim that McCarty had possession of the whiskey, but was competent to show a motive for the act with which he is charged. Roberson, Ky. Crim. Law & Proc., Vol. 2, Sec. 954; O'Brien v. Com., 89 Ky., 362; Franklin v. Com., 96 Ky., 612; Martin v. Com., 93 Ky., 189; Painter v. People, 147 Ill., 444; Pierson v. People, 79 N. Y., 424; Com. v. Choate, 105 Mass., 458.

Complaint is also made of the admission of Bell's testimony to the effect that he identified the whiskey sold him by the defendant as being of the Old Tub Fowler brand. It is insisted that his twenty years' experience in drinking different brands of whiskey is not sufficient to qualify him as an expert. It may be doubted if the witness was qualified to give his opinion on the question. However, we do not regard the admission of this evidence as prejudicial, in view of the many other circumstances tending to establish defendant's guilt.

Judgment affirmed.