## Liverpool & London & Globe Insurance Company v. Wright, et al.

## Old Colony Fire Insurance Company v. Same.

## Citizens' Fire Insurance Company v. Same.

## People's National Fire Insurance Company v. Same.

(Decided October 13, 1915.)

### Appeals from Graves Circuit Court.

1. Estoppel—Judgment.—Estoppels must be mutual, and hence a party will not be concluded against his contention by a former judgment, unless he could have used the judgment as a protection, or the foundation of a claim, had the judgment been the other way.

2. Judgment—When Cannot be Relied on as Estoppel.—A judgment cannot be relied upon as an estoppel unless it was rendered in an action, in which the parties as between whom it is claimed to be an estoppel, were parties, and in the same relations and capacities, or else they must be in privity with the parties in such former action.

3. Judgment—Res Judicata.—In order to render a matter res judicata, there must concur identity in the thing sued for; identity of the cause of action; identity of persons and parties to the action; and identity of the quality in the persons for or against whom the claim is made.

4. Judgment—When Not Estoppel in Civil Action.—A judgment in a criminal prosecution constitutes no bar or estoppel in a civil action, which is based upon the same facts and transaction, and conversely as to a judgment in a civil action proposed to be used in a criminal prosecution.

5. Judgment—When Not Bar to Prosecution of Action.—A judgment in a civil or penal action is no bar to the prosecution of the other.

6. Judgment—Evidence of Want of Probable Cause in Malicious Prosecution Suit After Acquittal.—However, in a suit for malicious prosecution or for false imprisonment, a judgment of acquittal in the prosecution upon which the suit for malicious prosecution is based, or the offense for which the false arrest was made, must be shown and is evidence of the want of probable cause for the prosecution or arrest; and if the judgment be a conviction, it is conclusive evidence of the existence of probable cause for the prosecution or arrest, unless the plaintiff alleges in his petition and sustains by proof, that the judgment of conviction was obtained by fraud, corruption, or perjury.

7. Trial—Improper Argument of Counsel—When Verdict Will Be Set Aside.—When attorneys, in the argument of a case before a jury, proceed out of the record and charge that things are facts, which are not supported directly or inferentially by any proof in the record, and which are calculated to improperly influence the jury, in reaching a verdict, and are successful in obtaining a favorable verdict, there is nothing to do except to set aside a verdict obtained in such a way.

8. Evidence—When Transcript of Witness Cannot be Read.—The transcript of the evidence of a witness, upon a former trial of a case, cannot be read upon a subsequent trial, without the affidavit and showing that the testimony of the witness could not be had in the way provided by law, as required by Section 4643, of the Kentucky Statutes.

9. Trial—Custody of Jury—Discretion of Court.—In a civil case, where the court, in furtherance of justice, places the jury in the custody of an officer, before the case is finally submitted to it, with directions not to separate, it is a matter within the discretion of the trial court, and must be left to the discretion of the trial court to determine whether any violation of its order for the jurors to remain together, is prejudicial to the substantial rights of the parties.

10. Trial—Jury—Misconduct of Counsel—Verdict.—Where a jury, in a civil case, has been placed in the custody of an officer, and directed to remain and be kept together, during a trial, and before the final submission of the case to them, and the attorney of the successful party, on numerous occasions, and from time to time during recesses of the court, calls different members of the jury from their fellows, and engages in conversations with them, which cannot be heard by those present, and treats the jurors with liquors, although at their solicitation, the verdict will be set aside, in the absence of any explanation of these circumstances.

M. B. HOLIFIELD, BUNK GARDNER and LESLIE HINDMAN for appellants.

W. J. WEBB, ROBINS & THOMAS and SEA & VIA for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellees, B. W. Wright and V. E. Allen, were partners, and engaged in the business of buying, prizing, and selling tobacco, in Mayfield, Kentucky, under the firm name and style of B. W. Wright, and as such, occupied for the purposes of their business, a barn, which was the property of G. R. Allen and W. A. Usher. The appellants, Liverpool and London and Globe Insurance Company, Old Colony Fire Insurance Company, Citizens' Fire Insurance Company, and People's National Fire Insurance Company, each, issued to the firm of B. W. Wright, a policy of insurance upon the tobacco, in the barn, insuring it against destruction or damage by fire. The owners of the barn, also, carried insurance against damage from fire upon the barn, but in what companies, it does not appear. The barn and the greater part of its contents were consumed by fire, and thereafter, the appellants having declined to pay the losses on account of the destruction of and damages by fire to the tobacco, the appellees filed a suit against each of them to recover the damages, which were insured against by reason of the policies. A separate suit was filed against each of the appellants, and answers and other pleadings were filed in each of the cases, until the issues were made. Each of the answers presented substantially the same defense against a recovery. The defense relied upon was the allegation, that the appellees had wilfully set fire to the barn and the stock of tobacco, which was contained by it, and caused the barn and tobacco to be burned, for the fraudulent purpose of collecting the insurance carried upon the tobacco. This defense was controverted by reply, in each case. Thereafter the four suits were consolidated, and tried at the same time and before the same jury. The trial resulted in a disagreement of the jury, and a continuance of the case. At a subsequent trial, the jury returned a verdict against the appellants for a portion of the amount of the insurance, and the court rendered a judgment accordingly, but upon an appeal to this court, the judgment was reversed, and the consolidated cases remanded for further proceedings.

Thereafter, each of the appellants tendered and offered to file an amended answer, in which it was alleged, that since the pendency of the litigation, that an indictment had been returned against the appellee, B. W.

Wright, in which he was charged with the crime of wilfully and unlawfully setting fire to and causing to be burned the tobacco house or warehouse, in which the tobacco of the appellees was stored, and that there was insurance upon the house, being the crime denounced by Section 1169, Kentucky Statutes; and that he had been put upon trial upon the indictment, and convicted and sentenced to a term in the penitentiary; that he had appealed from the judgment of conviction to this court, and the judgment was affirmed; that the contents of the barn, on account of the destruction of which by fire, the appellees were maintaining the suits, were consumed by and in the same fire which destroyed the barn, and for the setting of which, the appellee, Wright, had been tried and convicted, and plead the judgment of the Commonwealth of Kentucky against B. W. Wright, as a complete bar to recovery by appellees in these consolidated suits. The appellees objected to the filing of these amended answers, and the court sustained their objections and refused to allow them to be filed, to which the appellants, each, saved an exception.

Thereafter, another trial was had before the court and a jury, and at this trial a large number of witnesses were introduced and evidence heard upon the issues made as to the amount and value of the tobacco, which was burned and damaged; and as to whether or not the barn was set fire to by the appellees and the contents caused to be burned by them, or either of them. The trial resulted in a verdict by the jury in favor of the appellees, and upon this verdict the court rendered a judgment in favor of appellees against the Citizens' Fire Insurance Company for $1,000.00, the Old Colony Insurance Company for $1,000.00, the People's National Fire Insurance Company for $1,000.00, and the Liverpool and London and Globe Insurance Company for $2,000.00.

The appellants filed grounds and moved the court to grant them a new trial, which was refused, and to which they excepted, and they have now appealed to this court.

A reversal of the judgment is sought upon the following grounds:

First: Because of misconduct of appellees' attorneys in the argument of the case before the jury.

Second: Because of the misconduct of the attorneys for the appellees, in their efforts to wrongfuly influence the jury in its decision upon the issues of the case.

Third: Because of error of the court in permitting the appellees to read, as evidence to the jury, the transcript of the evidence given by Goldie Ford upon a former trial.

Fourth: Because of errors made by the court in its rulings upon the admission and rejection of evidence offered upon the trial.

Fifth: Because the court erred in not permitting the appellants to file their amended answers, in which they relied for a defense upon the judgment, which adjudged B. W. Wright to be guilty of setting fire to and burning the barn and tobacco.

Sixth: Because of the misconduct of the jury.

Seventh: Because the verdict was flagrantly against the evidence, indicating that the jury was actuated by passion or prejudice.

Eighth: Because of newly discovered evidence.

Ninth: Because the jury, after being ordered to be kept together, in the custody of the sheriff, were permitted to separate.

The contention of the appellants, that the court erred to their prejudice in overruling their motion to file the amended answers, in the fifth ground for a new trial, will be first considered, because if the judgment therein plead and relied upon, as a bar to appellees' recovery, constituted such bar, it completely disposes of the case, and no further questions need to be considered. It will be borne in mind, that the original answers presented the defense, that the appellees had wilfully burned the barn and its contents, and there is no doubt, that such is a good and sufficient defense, if supported by the necessary evidence, to the cause of action stated by appellees, in their petitions. It may, also, be conceded, that if one of the parties wilfully burned the barn and its contents, that they could not as partners recover upon the policies of insurance. The conviction of the crime denounced by Section 1169, Kentucky Statutes, based upon the charge in the indictment, that B. W. Wright and others associated with him, wilfully and unlawfully conspired together to do so, and in furtherance of such conspiracy, set fire to and burned the barn, was had in an action by the Commonwealth of Kentucky against B. W. Wright, and in which neither the appellants nor the other partner, Allen, were parties, either of record or otherwise. The proceeding by the state was for the purpose of re-

dressing a wrong, which Wright had committed against it. If the trial of Wright upon the indictment had resulted in an acquittal, could he and Allen then have offered the judgment of acquittal as a bar to the defense of appellants, that appellees had themselves burned the barn and its contents? A mere statement of the proposition is its answer. The appellants could not be bound by the judgment pronouncing Wright not guilty of the crime charged in the indictment, because they were not parties to the action and had no control of the proceedings. Can one of whom a recovery in damages is sought for an alleged assault or battery, plead a judgment of acquittal upon an indictment based upon the same facts, in bar of the plaintiff's recovery? Or could one seeking the recovery of damages for an assault and battery, plead a judgment of conviction of the defendant upon an indictment based upon the same facts, in bar of defendant's plea of *son assault demesne,* or a plea traversing the assault and battery? In the first instance, such judgment could not be plead, because the plaintiff was not a party to the action in which the judgment was rendered, and in the second instance, it should not be allowed, because the plaintiff was not in anywise prejudiced, nor any right of his determined by the judgment, nor would he have been prejudiced, if the judgment had been one of acquittal and not a conviction. To hold that the judgment of conviction against B. W. Wright was a bar to appellees' cause of action, in the case at bar, would have been to estop the appellees to assert their cause of action. The rule is that estoppels must be mutual. Bridges v. MacAllister, 106 Ky., 791; Chiles v. Conley, 7 Dana, 21. In 23 Cyc., 1238, the doctrine is thus stated:

"It is a rule that estoppels must be mutual; and therefore, a party will not be concluded against his contention, by a former judgment, unless he could have used it for a protection, or as the foundation of a claim, had the judgment been the other way; and conversely, no person can claim the benefit of a judgment as an estoppel upon his adversary unless he would have been prejudiced by a contrary decision of the case." In 23 Cyc., 1237, it is said:

"To constitute a judgment an estoppel there must be an identity of persons as well as the subject matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel, must have been parties to the action in which it was rendered, in

the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action.''

In American and English Encyclopedia of Law, Vol. 24, page 778, the following rule is stated:

''The rule is commonly laid down, that in order to render a matter *res judicata,* there must be a concurrence of four conditions, viz.: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.''

In the volume, *supra,* it is said:

''A judgment in a criminal prosecution constitutes no bar or estoppel in a civil action based upon the same facts or transactions, and conversely of a judgment in a civil action sought to be given in evidence in a criminal prosecution. * * * As between civil and penal actions, a judgment in one is, of course, no bar or estoppel to the prosecution of the other, if the parties are not the same, identity of parties being a fundamental requisite of *res judicata,* but where there is a mutuality of parties, it has generally been held otherwise, etc.''

In this jurisdiction, it has, however, been held, that although the parties were the same and the actions based upon the same set of facts and circumstances, that a judgment of acquittal in an action penal in its character, was not a bar to a civil action. Ellison, &c. v. City of Louisville, 17 R., 593. The court rested its decision upon the fact, that a different weight of testimony was required for a conviction in the penal case, from that required for a recovery in the civil case.

If Wright had been acquitted, instead of convicted, of his guilt of the indictment against him, he could not have used the judgment as a bar to appellants' defense, that he burned the barn and its contents, because appellants were not parties to the action, in which he was acquitted, and hence could not be prejudiced thereby, and the judgment lacked mutuality as an estoppel, and, further, the parties to the action, at bar, were not the same as in the case, in which Wright was convicted.

The rules above announced are founded upon many reasons, which are not necessary to be enumerated here, but, suffice it to say that they have been so long established, that they can not now be called in question.

In the case of Cooper v. Commonwealth, 21 R., 546, relied upon by counsel for appellants, the parties were· the same and occupying the same antagonistic relation to each other, as in the case wherein the judgment was held to·be a bar, to a proceeding in the case, *supra,* and the cause of action was the same in each case. The same was true of the case of Petitt v. Commonwealth, 22 R., 262, and hence neither of those decisions can have any application to the case at bar.

As to the case of Waddle v. Wilson, 164 Ky., 228, counsel overlook the fact, that this was a suit against a policeman for damages for alleged false imprisonment, and that in an action of this character, or one for malicious prosecution, on account of the nature of the actions, a rule peculiar to such actions applies to the efficacy of the judgment, which terminates the proceedings, which follow the alleged false imprisonment or malicious prosecution. In actions of this character, it is. necessary to show the termination of the proceedings complained of. If an action for malicious prosecution, the complainant must show that the prosecution of which he complained, terminated favorably to him, or that his conviction was procured by perjury or corrupt practices, and in an action for false imprisonment, the same rule applies. Duerr v. Ky. & Ind. Bridge & R. R. Co., 132 Ky., 228; Sping v. Besore, 12 B. M., 551; Hegan Mantel Co. v. Alford, 114 S. W., 290. In the two kinds of actions mentioned, the complainant must show that the prosecution against him, or the arrest, where made by an officer without a warrant, were without probable cause. The existence of probable cause is a sufficient defense, in either action. If the prosecution complained of, or the arrest complained of, terminated in the acquittal of the party of the crime or offense for which he was prosecuted, or on account of which he was arrested, he can use the judgment in his favor as evidence, that there was no probable cause for his prosecution or arrest, and if convicted of the crime for which he was prosecuted or arrested, the judgment is conclusive evidence of the existence of probable cause for his prosecution or arrest, unless in his petition, he alleges and sustains by proof, that his conviction was obtained by fraud, corruption, or perjured evidence. In the case of Waddle, et al. v. Wilson, *supra,* the defendant by amended petition, plead the conviction of the plaintiff of the offense for which he was arrested, and the lower court sustained a demurrer to the answer,

and this court held that the amended answer presented a good defense.

The case, at bar, was an action upon a contract between the appellees and appellants.

The court was not in error in overruling the motion to file the amended answers. Neither can the judgment of conviction of appellee, Wright, of the crime of burning the barn, be used in evidence, except that appellants may prove the fact of his being convicted of a felony, for the purpose of impeaching his testimony, as a witness, in the lawful way, and under the proper admonition of the court.

Without reciting any of the facts, in evidence, it cannot be held that the verdict of the jury was flagrantly or palpably against the weight of the evidence or that there is not sufficient evidence to support the verdict.

The contention that appellants should have a reversal of the judgment because of newly discovered evidence, is not tenable. The affidavits on file show that the appellants had actual knowledge of the evidence, which would be given by the proposed witness, Gordon, before the trial, and no reason is given for a failure to introduce him, at the trial, except his claim, that he would not testify because his statements would tend to incriminate him of the crime of assisting in burning the barn. His statements, as detailed in his affidavit, would not be evidence of his own guilt, and there was no reason for the failure to offer him as a witness upon the trial.

The court erred in permitting appellees to read the transcript of the evidence of Goldie Ford, given upon a former trial of the case. The appellants objected to the reading of it, upon the ground that no effort had been made to secure her presence as a witness or her testimony at the trial, and the affidavit required by Section 4643, Kentucky Statutes, was not offered or filed. The statute explicitly provides, that such testimony can be used only "where the testimony of such witnesses cannot be procured, which fact must be made to appear satisfactorily to the court by the affidavit of the party desiring to use the same, or his attorney." There is no showing or attempted showing made, that the testimony of this witness could not have been obtained by deposition or other way, provided by law, and no excuse is made for the failure. No affidavit of any one was filed. The statements read to the jury, as the evidence of this witness, were material, and the permitting it to be read

KENTUCKY REPORTS. [Vol. 166.

was prejudicial error. Sou. Ry. Co. in Ky. v. Owen, 164 Ky., 570.

During the trial, below, and while appellee, B. W. Wright, who was offered as a witness for appellees, was testifying upon cross-examination, he was asked the following questions, which were objected to by appellees, and the objections sustained, and he was not allowed to answer the questions:

(1) "Is it not a fact, that you had a fight with G. R. Allen, the father of V. E. Allen, in the presence of R. F. Wright?"

(2) "Is it not a fact, that during that fight you told said G. R. Allen, that you and Vic (appellee, V. E. Allen) are as guilty of burning that barn, as I am, and if I have to go to the penitentiary, you will have to go too?"

(3) "I will ask you, while you were in jail, if Mr. Bob Wright ever came to see you in the interest of G. R. Allen, and asked you not to tell on them?"

(4) "If you didn't reply to that question of Bob Wright, by saying that they are just as guilty of burning that barn as I am?"

(5) "Is it not a fact, that while you were in jail, after you had been convicted of burning the barn in which this tobacco was stored, and sentenced to the penitentiary for said crime, that you stated to Bob Wright, that there were others just as guilty as you were?"

It is avowed, that if the appellee, B. W. Wright, had been permitted to answer, that he would have answered "yes" to each of the questions, and the court's refusal to allow him to answer is complained of as prejudicial error.

The first question relates to a matter not relevant to the issues in the case, and any answer, which might have been made thereto, was properly excluded. An answer to the third question was, also, properly excluded, because G. R. Allen was not a party to the suit, and the question does not indicate what or who it was that G. R. Allen wanted protected, and the appellees could not be affected by his statements. From an affirmative answer to the second, fourth, and fifth questions, it might be inferred, that Wright himself was guilty of burning the barn, although the admission that he used the language there inquired about, would not be an unequivocal admission of guilt. The issue was whether or not the appellees, or either of them, burned the barn, and Wright having testified that he did not do so, an affirmative an-

swer to those questions would, without explanation, have been contradictory to the statements made in his direct examination, and the appellants were entitled to have his answers thereto, for the purpose of affecting his credibility, or if he denied that he used the language to contradict him by proving that he did make such declarations. Wright being a party to the suit, the appellants were entitled to prove the declarations inquired about, if he made such, as evidence, in chief, not as evidence conducing to prove that any other persons were guilty of burning the barn, but that Wright had done so, himself.

Another ground for a reversal insisted upon, is the misconduct of the attorneys for appellees, in making their arguments to the jury. The bill of exceptions shows, that while one of the appellees' attorneys was addressing the jury, he said:

"After this red headed woman (Mrs. Lillie Riley Pearson) testified, and after I went to my hotel, I saw her prancing up and down in their office (pointing to the table where attorneys for defendant sat), with her handkerchief to her eyes."

The witness, Lillie Riley Pearson, had testified upon the trial, that she was at the house of Lee Perkins, shortly before the burning of the tobacco, and that B. W. Wright came there, and he and Perkins discussed the decline in the price of tobacco, and Wright requested Perkins to assist him in the burning of his barn, so that he could collect the insurance. There was nothing in the record to support the statement of Via. It was testimony given by him to the jury, after the conclusion of the legal evidence in the case, without being under oath as a witness, and when there was no opportunity for a cross-examination. It could have no meaning, except to impeach the testimony of the witness, by impressing upon the jurors, that she was acting under some character of duress imposed upon her by the attorneys for appellants, or someone else. Although the statement was objected to, the court ignored the objection, and failed to admonish either the attorney or the jury, in regard to it.

Another of appellees' attorneys, in addressing the jury, said:

"That fellow, Peel (speaking of J. J. Peel, Assistant Fire Marshal) has bought and by intimidation procured these witnesses for the defendant." (Speaking of Lee Perkins, Lillie Riley Pearson, and William Gambel.)

There was nothing in the record to support this declaration. If the jury was impressed by it and believed it, it could have no other result than to cause the jury to discard the testimony of the witnesses referred to, in making its verdict, and to discredit the witnesses for the appellant, generally. The statement by the attorney was objected to, at the time. but the court ignored the objection.

When attorneys, in the argument of a case before a jury, make statements declaring things to be facts, which the record does not support, either directly or inferentially, and which are calculated to improperly influence the jury in its finding, there is nothing to be done except to set aside the verdict in their favor, and to impose the burden of another trial upon their clients. The statements of the counsel for appellees, above set out, were calculated to improperly influence the jury, and were prejudicial. Owensboro Shovel & Tool Co. v. Moore, 154 Ky., 431; 157 S. W., 1121.

The second and sixth grounds, upon which a reversal is sought, we will consider together, as both relate to the misconduct of the jury, and some of the counsel of appellees, with relation to the jury.

These grounds are supported by affidavits and no counter affidavits are filed, which contradict any of the statements made. The court placed the jury, who heard this case, in the custody of an officer. It seems that there are no provisions of the Civil Code, which confer authority upon the court to place a jury, in a civil case, in the custody of an officer, and to require the jury to remain together, until after the case has finally been submitted to it, but in Smith's Admrx. v. Middlesboro Electric Company, 164 Ky., 46, it was said, that if the court has the inherent right to require the jurymen, in a civil case, to remain together during the trial of the case and before its final submission, it must be considered to be a matter within the sound discretion of the court, and in furtherance of justice, and it must be left, in such cases, to the sound discretion of the trial court to determine whether any violation of its order, in reference to the jurors remaining together, is prejudicial to the substantial rights of the parties. There does not seem to have been any substantial violation of the court's order to remain together, on the part of the jury, but the officer having the jury in charge, seems to have left the presence of the jury, at least upon one occasion, when he went to

the room of appellees' attorney, J. D. Via, to procure whiskey for the jury, and on another occasion to get a drink for himself. The uncontradicted statements, in the affidavits, show, that frequently while the jury were hearing the case, and during recesses, when it would be at the hotel, where it was kept, and where Mr. Via, one of the attorneys for the appellees boarded, that Via was frequently seen to call a juryman from the others, to a distance of ten or fifteen feet, and there engage in a conversation with the juror, which could not be heard by the affiants; that G. R. Allen, the father of appellee, V. E. Allen, and another who was an attorney for appellee, in the case, were from time to time, during the trial, seen mixing freely and conversing with the different jurors; that Mr. Via took an officer, in charge of the jury, to his room and gave him a drink of whiskey; that on one occasion, in the lobby of the hotel, two of the jurymen requested Mr. Via to give them whiskey, and requested the officer to allow them to go with Via to his room to get whiskey; that afterward, at the request of several jurymen, the officer, in charge, went to Via's room and bore to him the request of the jurymen to send them whiskey; that Via said that he did not have the whiskey then, but would have it later, and showed him a drawer in which he would find it, and in a few minutes the officer returned to Via's room and found in the drawer a quart bottle which was filled a little over one-half with whiskey, and which he took to the jury, and the jurymen drank it upon that night before retiring and on the next morning. The mere fact that jurymen have used intoxicating liquors during a trial, but not to such an extent as to be under its influence while hearing the testimony or considering of the verdict, has never been held a sufficient ground upon which to set aside the verdict of the jury. Gordon v. L. St. L. & G. Ry. Co., 16 R., 713; Smith's Admrx. v. Middlesboro Electric Co., 164 Ky., 46; Perry v. Bailey, 15 Kan., 539. Whether any improper influences were brought to bear upon the jury, or whether by the actions and conduct detailed in the affidavits, anything improper or wrong occurred or was intended, can not be known, either on the part of the jurymen or Mr. Via, but the facts and circumstances, none of which are denied nor explained, indicate a purpose and attempt to practice upon the jury for the benefit of appellees' cause. In 29 Cyc., 803, it is said:

"It is generally ground for a new trial, that members of a jury were entertained or treated during the trial by the successful party, or by his attorneys, or agents, and especially that a juror or jurors were furnished with intoxicating liquors by or on account of such party. It need not be shown that the offending person understood the impropriety of his act, or that any juror was actually influenced thereby."

Here an attorney for the appellees, whom we must presume had knowledge of the fact, that the jury were put in charge of an officer, and directed to remain together for the purpose of preventing improper influences reaching them, invites the officer to leave the presence of the jury, and go with him to his room, upon one occasion, at least, and then engages in plucking different members of the jury away from their fellows, and engages them in conversations, which can not be heard by persons ten or fifteen feet away, and in treating them with whiskey, although at their solicitation. In Cottle v. Cottle, 19 Am. Dec., 200, the court said:

"It is insisted that the juror was not in fact influenced, and that justice has been done between the parties. It may be so; but it may be useful to the party to learn that a good cause may be injured, but can not be promoted, by conduct of this sort, and to the public generally to know that it will be tolerated in no case whatever."

The affidavit of J. R. Johnson, one of the jurors, is not considered by us. Steel's Heirs v. Logan, 3. Mar., 397; Allard v. Smith, 2 Met., 297; Lucas v. Cannon, 13 Bush, 650; Doran v. Shaw, 3 Mon., 415.

For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.