## Wilhoit, Director of Banking, et al. v. Furnish et al.

Oct. 5, 1943.

Sidney S. McKinney, Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellants.

McMurry & Shoup and John T. King for appellee National Surety Corporation.

No appearance for appellee Albert Lee Furnish.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

The suit was instituted by Hiram Wilhoit, Director of the Division of Banking of the Commonwealth of Kentucky, by and through George I. Brandon, Special Deputy Bank Director in charge of liquidating the assets of the Bank of Golden Pond, of Golden Pond, Kentucky, against Albert Lee Furnish and his surety, the National Surety Corporation, wherein recovery was sought in the sum of Thirteen Thousand Eighty-Eight Dollars and Twenty-Three Cents ($13,088.23), representing the amount of money allegedly embezzled by Furnish while Cashier of the Bank. It is stipulated by the parties that Furnish embezzled Twenty-Five Hundred Dollars ($2,500) per year for the five (5) year period commencing October 25, 1934. No part of the shortage was discovered until February 23, 1939. Five (5) days after the shortage was discovered, the Banking Department notified the National Surety Corporation of the shortage, and demand was made on it for restitution. The trial court entered judgment in the amount of Twenty-Five Hundred Dollars ($2,500), representing the amount embezzled from October 25, 1938, to February 23, 1939, the date of discovery of the loss.

The appeal requires the construction of the surety bond: Specifically, whether the Surety Company is liable for the loss sustained by the Bank over the entire five year period covered by the bond, or whether it is only responsible for the loss sustained within the term of the last renewal thereof. It is asserted that the first paragraph of the bond binds the Surety Company for the loss over the entire period covered by the bond. That

paragraph reads: ''The National Surety Corporation (Corporation), in consideration of the payment of the premium of One Hundred Seventy Five ($175.00) Dollars, on the 25th day of October of each and every year that this bond shall continue in force, hereby agrees to indemnify Bank of Golden Pond, Kentucky (Employer) against direct loss, not exceeding during the entire period of suretyship Ten Thousand & 00/100 Dollars, of money or other personal property which the employer may sustain by reason of any act of larceny or embezzlement of Albert Lee Furnish (Employee) in the performance of the employee's duties as Cashier at Golden Pond, Kentucky, in the Employer's service, committed alone or in connivance with others, after the 25th day of October, 1934, and before the termination of this bond as hereinafter provided.''

But to give the surety contract the construction insisted upon by appellant would be to disregard entirely the provisions of Section 3 of the bond, which reads: ''Written notice of claim as to loss hereunder must be filed with the Corporation within three (3) months after the termination of this bond for any reason, except, if the bond is continued from year to year, each year shall be construed as a separate bond year and the Corporation shall not be liable for any loss occurring within any bond year unless written notice of claim as to such loss is filed with the Corporation within three (3) months after the expiration of the bond year in which the acts or defaults resulting in such loss shall have been committed. The liability of the Corporation on account of all loss-(es) occurring during any and all yearly periods of the bond shall not be cumulative and shall not exceed in the aggregate the amount specified in the first paragraph of the bond.''

Cases are cited in support of the contention of appellant, which express the rule that any ambiguity in an employee's fidelity bond is to be construed most strongly against the company issuing such bond, one of which is Champion Ice Mfg. & Cold Storage Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Sep. 356; see also Cooley's Briefs on Insurance, Vol. 2, page 969. We subscribe to the rule expressed in those authorities, but it has no application here. The language used is not ambiguous, but is very clear, and the intention of the parties is succinctly stated in the contract. It provides specifically that whilst the Com-

pany is liable for any loss during the entire term of the bond, nevertheless, before liability may attach, notice of the loss must be given the Surety Company within three (3) months after the expiration of the particular bond year. The first bond year consists of the twelve (12) month period following the issuance of the bond, and each additional twelve (12) month period thereafter shall constitute a separate and distinct bond year.

Nor do we think that Section 4 modifies, to any extent, Section 3 recited above. Section 4 reads: "Upon discovery by the employer of any evidence of acts or circumstances indicating a probable claim hereunder, the employer shall immediately notify the corporation thereof by registered mail addressed to the corporation's home office giving all facts and details then known to the employer." This section merely provides that, if the employer should discover a defalcation, it shall be its duty immediately to notify the Surety Company of that fact. That is an additional precautionary measure on the part of the Surety Company, and does not relieve the Bank of the requirement of discovering an indemnified loss within three (3) months after the expiration of the bond year in which it occurred. The three month limitation is not contrary to, but is consonant with, public policy. In American Bonding Co. of Baltimore v. Ballard County Bank's Assignee, 165 Ky. 63, 176 S. W. 368, 372, a provision requiring the discovery of the loss within six (6) months after the termination of the bond was held valid. The Court said: "This court, as well as others, have held that a bond such as the one sued upon in this case, which had a clause requiring the discovery of the losses to be made within six months after the termination of the obligation, and proof of it to be made during that time, that such is a reasonable and binding agreement, and, unless complied with, the surety is released from liability. Ballard County Bank's Assignee v. United States Fidelity & Guaranty Co., 150 Ky. [236], 240, 150 S. W. 1, Ann. Cas. 1914C, 1208; DeJernette v. Fidelity & Casualty Co., 98 Ky. 558, 33 S. W. 828, 17 Ky. Law Rep. 1088; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Proctor Coal Co. v. United States Fidelity & Guaranty Co., C. C., 124 F. 424. Such requirement is not in contravention of the public policy of the state, because it has no mischievous tendency, and is rather an incentive to the officers of a bank in performing their duties to those who trust their funds with

it.'' The purpose of such a provision in a surety bond is to require vigilance, which the surety company has the right to expect, on the part of the employer. It is an incentive to the officers of the bank to make frequent examinations of the books of employees entrusted with the handling of the money of its depositors. If the result sought by the inclusion of such provision can be accomplished, it will inure to the benefit of the public. DeJernette v. Fidelity & Casualty Co., supra.

The construction asked for by appellant would require the court to write a new contract for the parties, and which of course it may not do. In Ransdell v. North American Accident Co., 275 Ky. 507, 122 S. W. (2d) 114, 116, quoting from the opinion in Court in Hawkeye Commercial Men's Association v. Christy, 8 Cir., 294 F. 208, 213, 40 A. L. R. 46, the court said: '' 'Parties to insurance contracts have the right and power to contract for what accidents and risks the company shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them.' '' To the same effect are Bahre v. Travelers' Protective Ass'n of America, 211 Ky. 435, 438, 277 S. W. 467, and Niagara Fire Ins. Co. v. Mullins, 218 Ky. 473, 291 S. W. 760, 762. In the case last cited the Court said: ''An insurance company may determine for itself on what terms it will undertake to indemnify a property owner against loss, and it cannot be compelled to provide the indemnity on any terms other than those it makes itself, provided, always, that the terms of the policy are not illegal or against public policy.''

Since the Surety Company received no notice of loss within the three month period of limitation for any bond year covered by the policy, except the bond year commencing October 25, 1938, the liability of the Surety Company is restricted to the loss incurred in that bond year, viz., Twenty-Five Hundred Dollars ($2,500).

The judgment is affirmed.