Louis SHATZ, Appellant,

v.

AMERICAN SURETY COMPANY OF NEW
YORK and Nora Catherine Breen,
Appellees.

Court of Appeals of Kentucky.

Dec. 16, 1955.

As Modified on Denial of Rehearing
Nov. 30, 1956.

S. Arnold Lynch, Louisville, for appellant.

Bullitt, Dawson & Tarrant, Sam J. Stallings, Louisville, for appellee.

CLAY, Commissioner.

This suit was brought by the plaintiff against defendants Nora Breen and her

surety company to recover $30,000 alleged to have been misappropriated by her while employed as plaintiff's bookkeeper. After a lengthy trial the jury returned a verdict for defendants. Plaintiff asks that the judgment be reversed on a number of grounds.

Since 1940 Mrs. Breen had been employed as a bookkeeper by the plaintiff. She finally left his employ on October 7, 1949. Shortly after termination of the employment an audit of plaintiff's books showed a substantial shortage of currency traceable to the difference between the gross receipts and the bank deposits shown by the books. It is plaintiff's claim that the withdrawals of cash were made by Mrs. Breen over a long period of time, and involved a great number of items. Her defense was that these withdrawals were made by the plaintiff (no impropriety suggested), and any discrepancies that might appear in the books are a result of his method of conducting the business.

-1-

This suit was practiced under the Civil Code of Practice and was brought as a common law action. By amended petition plaintiff alleged it would be necessary to have accountants testify with respect to hundreds of names, amounts and dates; that this evidence would present a long series of bookkeeping transactions and a highly technical analysis thereof by experts; and that "great details of fact and complications of various bookkeeping entries make it impractical for a jury to try this case intelligently". On the basis of these allegations, supported by an affidavit, plaintiff moved to transfer the case to equity under Section 10(4) of the Civil Code of Practice. This motion was overruled and this ruling is the first ground urged for reversal.

This was not a suit on account, nor did it involve an accounting between the parties. As we have stated above, the case presented a legal issue as to whether or not Mrs. Breen had wrongfully taken the plaintiff's money. It is true that bookkeep-

ing accounts were involved in the controversy, but the parties were in substantial agreement as to what the regularly kept books showed. Admittedly they did not reflect a true picture of the withdrawals from the business. During the trial plaintiff went into every item in the books in fine detail, and eventually so complicated matters that anyone would have difficulty in understanding all the technical aspects of the case.

However, the basis for trying a suit in equity is that it is one of an equitable nature wherein the remedy at law (trial by jury) is inadequate and will not afford justice. O'Connor v. Henderson Bridge Co., 95 Ky. 633, 27 S.W. 251, 983. The fact that a great mass of evidence or a great number of witnesses is necessary to prove a legal issue does not necessarily convert the suit into one of an equitable nature. See Asher v. Golden, 232 Ky. 1, 22 S.W.2d 411; Lane v. Rowland, 295 Ky. 868, 175 S.W.2d 1000.

Under the Civil Code it has been held that the right to transfer a suit to equity is determinable exclusively on the pleadings. Wilhoit v. Cundiff, 291 Ky. 99, 163 S.W.2d 280. While plaintiff's pleading stated that his proof would require extensive explanations of accounts, neither those pleadings (nor the proof on the trial) changed this suit to one of an equitable nature within the meaning of Section 10 (4) of the Civil Code of Practice. We believe whatever complications were raised by the pleadings and the proof were not inherent in plaintiff's cause of action, but were created by the method he adopted in proving his case. We conclude that the court did not err in refusing to transfer this case to the equity side of the docket.

-2-

Plaintiff devotes a substantial portion of his brief to the proposition that the verdict is palpably against the weight of the evidence. At great length he argues that the books show many discrepancies, and that the methods used by Mrs. Breen

are those of an embezzler rather than those of a bookkeeper attempting to account for cash withdrawals made by her employer. While this proof was persuasive, it was rebutted. Mrs. Breen denied that she wrongfully took any of the plaintiff's money; she testified that there were other account books which the plaintiff did not produce; and she showed circumstances in support of her defense that the money was withdrawn by the plaintiff. Obviously one of the controlling considerations in this lawsuit was the respective credibility of the plaintiff and Mrs. Breen. The question of credibility is preeminently one for the jury.

■■■■ Under this same general head (weight of the evidence) plaintiff sought to have stricken the testimony of Mrs. Breen on the ground that upon cross-examination she was so evasive and vague that her testimony must be disregarded. He points to many instances where Mrs. Breen refused to answer questions or went off on some side issue. From a reading of Mrs. Breen's testimony, it must be admitted that there is some substance in plaintiff's contention. However, we cannot say that she was so evasive and vague that her testimony must be disregarded. This likewise went to her credibility, which the jury had a right to pass upon. The trial court properly declined to set aside the verdict on this ground.

–3–

Plaintiff's next contention is that the trial court erroneously admitted evidence of Mrs. Breen's acquittal on a criminal charge of embezzling plaintiff's money for the year 1949. At a pre-trial conference, and subsequently throughout the trial, plaintiff strenuously objected to the introduction of evidence with respect to the acquittal. This evidence was admitted as a "relative circumstance".

Prior to the case of Wolff v. Employers Fire Ins. Co., 282 Ky. 824, 140 S.W.2d 640, 130 A.L.R. 682, it was apparently settled in this state that a judgment of acquittal in a criminal prosecution was not competent evidence in a civil suit involving the same facts. Sovereign Camp of Woodmen of the World v. Purdom, 147 Ky. 177, 143 S.W. 1021; Bray-Robinson Clothing Co. v. Higgins, 210 Ky. 432, 276 S.W. 129; Occidental Ins. Co. v. Chasteen, 255 Ky. 710, 75 S.W.2d 363.

The Wolff case, above cited, involved a *judgment of conviction*. The decision in the case was that such a judgment does not constitute a bar in a civil action, but that it is admissible as circumstantial evidence. In the opinion, language was used to the effect that a judgment of conviction and a *judgment of acquittal* were in the same category, and that both judgments were admissible in a subsequent civil suit involving the same fact situation.

With respect to the judgment of acquittal, this was the purest dictum, as that question was in no respect involved. It has since been recognized as dictum by the editor of American Law Reports Annotated and the editor of American Jurisprudence. 18 A.L.R.2d 1219; 30 Am.Jur., Judgments, Section 293, page 1005, Note 19 (1955 Supp.). While in the Wolff opinion the case of Liverpool & London & Globe Ins. Co. v. Wright, 166 Ky. 159, 179 S.W. 49 (which involved a conviction judgment) was overruled, the cases above cited relating to judgments of acquittal were not discussed, and no case decided subsequent to the Wolff decision has been found which follows the unnecessary statement in that opinion with respect to a judgment of acquittal. As a matter of fact, in the case of Harlow v. Dick, Ky., 245 S.W.2d 616, which follows the Wolff decision with respect to a judgment of conviction, the reason for the rule given in the opinion would not be applicable to a judgment of acquittal.

The overwhelming weight of authority in other jurisdictions denies the admissibility of a judgment of acquittal as proof in a civil action involving the same facts. 30 Am.Jur., Judgments, Section 291; 50 C.J.S., Judgments, § 754(b)(1); Tennessee Odin Ins. Co. v. Dickey, 190 Tenn. 96,

228 S.W.2d 73, 18 A.L.R.2d 1287. In Massey v. Taylor, 45 Tenn. 447, 448, 98 Am.Dec. 429, it was specifically held:

"The acquittal of the plaintiff upon an indictment for embezzlement, is not entitled to any effect as evidence in a civil action, as an answer to the defense of embezzlement, or as tending to show, that, in fact, the plaintiff did not commit the embezzlement".

■ There are sound reasons why a judgment of acquittal should not be admissible in a civil action of this nature. Perhaps most significant is the fact that in the criminal prosecution the jury must find the defendant guilty *beyond a reasonable doubt*; whereas, in the civil proceeding the plaintiff may prove his case by a *preponderance of the evidence*. Thus the verdict of acquittal does not necessarily decide that the defendant did not commit the acts charged, but is a negative finding that the Commonwealth did not sufficiently prove the commission of a crime. In addition, since the plaintiff was not a party to the criminal proceeding, and since he is entitled to have an independent jury pass upon the merits of his claim, the finding of the criminal jury should not be used against him. Finally, in view of the difference in parties, procedures and degree of proof required; and the possibility that the prosecution may have been wholly inadequate; in the final analysis the verdict of acquittal is not such a fact as would constitute evidence of defendant's civil non-liability.

■ We believe the evidence was incompetent and inadmissible. There can be no doubt that it was highly prejudicial, because it afforded the civil jury, in a close case on the facts, too inviting an opportunity to substitute the finding of the criminal jury for its own independent judgment. See Occidental Ins. Co. v. Chasteen, 255 Ky. 710, 75 S.W.2d 363; Tennessee Odin Ins. Co. v. Dickey, 190 Tenn. 96, 228 S.W.2d 73, 18 A.L.R.2d 1284.

This error requires reversal of the judgment.

–4–

■ Plaintiff next contends the trial court erred in refusing to permit proof that during the time of the alleged embezzlement Mrs. Breen played poker for high stakes, losing more money than she earned. One Hash by way of avowal testified: that he had played poker with her every week and sometimes twice a week from 1947 up to the time when Mrs. Breen left plaintiff's employ in 1949; that during this time she won on only one or two occasions and all other times she lost, never less than $100 and sometimes as much as $300. When asked if she lost during this period as much as $20,000, Hash answered that she lost more than that. This evidence was relevant not only for the purpose of showing a motive for taking the money, but to show that Mrs. Breen had access to funds from a source other than her pay as a bookkeeper. The fact that this proof incidentally reveals gambling tendencies or that Mrs. Breen may have been guilty of certain illegal acts would not render it inadmissible. Chambers v. Simpson, 13 Ky. 290; Commonwealth v. Everson, 123 Ky. 330, 96 S.W. 460; Franks v. Commonwealth, 163 Ky. 96, 173 S.W. 327; Wigmore on Evidence, Sections 215, 216.

■ The trial court erred in denying plaintiff, on the ground of irrelevancy, the right to question Mrs. Breen about this matter and in excluding the testimony of Mr. Hash.

–5–

■ Plaintiff had shown that during the year 1948, from January through June, there was a discrepancy in the books each month ranging from $136 to $1,800. Because of sickness, Mrs. Breen did not keep the books in July, August and September of that year, and another bookkeeper was employed. Plaintiff undertook to show that there was no discrepancy in the books during those three months when Mrs.

Breen was not there. This evidence the court excluded. This evidence was relevant as a circumstance indicating that the shortages may have been due to the mishandling of funds by Mrs. Breen rather than the plaintiff, and it should have been admitted.

–6–

■ The plaintiff was asked a question by Mrs. Breen's counsel concerning the "stamp situation" in his office. In his answer he not only discussed the stamps, but also the pencil situation. Thereafter other witnesses were questioned about whether or not plaintiff kept the stamps locked up, whether or not he threw away used carbon paper, and what was his practice with respect to saving pencils. Plaintiff contends this was irrelevant matter and was highly prejudicial as it tended to prove a trait of stinginess. On the other hand, defendants insist the evidence was relevant to contradict the plaintiff, and also to show that he was a very careful business man. We believe some of this testimony elicited was irrelevant and seems to have been introduced to reflect on plaintiff's character. On another trial it will be proper to show the general methods adopted by the plaintiff in his office management, but questions concerning specific actions which do not bear on the principal issue in this case should not be permitted.

–7–

■ On cross-examination plaintiff was asked questions with respect to the amount of cash he kept in his safety deposit box, and he stated that he did not keep more than $75 or $100 in that box "unless there was a special occasion". Subsequently Mrs. Breen introduced evidence that in 1943 plaintiff had over $8,-000 cash in the box, and the court admonished the jury that this evidence should only be considered for the purpose of contradicting the plaintiff. We do not believe the evidence contradicted the plaintiff's testimony, and we are of the opinion that this incident was so remote in time as to be irrelevant. While the introduction of

this evidence would not, standing alone, constitute such prejudicial error as to require reversal, since the case must be reversed on other grounds, in the event of a new trial the evidence should be excluded.

–8–

■ Plaintiff had denied that he ever took checks from the cash drawer without replacing them with cash. Mrs. Breen introduced evidence that at one time the plaintiff took a check for $46 from the cash register without replacing the cash amount of the check. In developing this incident, over plaintiff's objection, Mrs. Breen brought out that plaintiff had accused another bookkeeper of taking $66. The transaction involving the other bookkeeper had no relevancy to the issues in the case, except insofar as it showed the plaintiff had taken a check without leaving cash. On another trial the evidence on this item should be so limited.

–9–

Plaintiff contends that the court erroneously excluded opinion evidence by an accountant to the effect that from his examination of the books he was of the opinion that the missing money was taken by the bookkeeper. The court also excluded evidence that the Internal Revenue Department had allowed the plaintiff deductions on his federal income taxes because of embezzlement.

■ The single issue in this case was whether or not Mrs. Breen embezzled the missing money. This was the ultimate fact to be decided by the jury. Opinion evidence is not admissible as to that ultimate fact. Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345. Both of these items of evidence were properly excluded.

–10–

The court directed a verdict for the defendant surety company on a $3,000 fidelity bond issued in 1942. This bond provided that coverage should be cancelled imme-

diately the employee leaves the service of the employer. On July 3, 1948, Mrs. Breen left the employment of the plaintiff but returned October 31. An issue was raised as to whether she was on a temporary leave of absence or whether the employment had been terminated. However, the plaintiff settled that question when about the middle of October he sent to the defendant surety company a "Notice to Cancel or Terminate", in which he requested the cancellation of this policy "to become effective on the 3 day of July 1948". The company cancelled the policy as of that date and returned the unearned premium. The cancellation date is important because the policy required discovery of the loss within 15 months after cancellation. Admittedly the discovery was made on October 26, 1949, more than 15 months after July 3, 1948.

Plaintiff argues that he intended to cancel this policy under one of its other provisions, but it is evident to us that he himself made the cancellation effective on the July 3 date, and that he had no enforceable claim under this policy.

–11–

Another policy (in the amount of $4,000) was issued in 1948, which required that notice of loss be given within 15 days after discovery and that an itemized proof of loss should be filed within three months after discovery. Plaintiff testified that about the middle of September, 1949, he realized that something was wrong with his books. His suspicions were not confirmed until October 26, 1949. It was then that the loss was first "discovered". 50 Am.Jur., Suretyship, Section 348; Fidelity & Guaranty Co. of N. Y. v. Western Bank, 94 S.W. 3, 29 Ky.Law Rep. 639; Perpetual Bldg. & Loan Ass'n v. U. S. Fidelity & Guarantee Co., 118 Iowa 729, 92 N.W. 686. A formal written notice of loss was not given until November 23, 1949, and the proof of loss was not filed until January 12, 1950. However, the evidence indicates that after Mrs. Breen left plaintiff's employment on October 7, 1949, and prior to the formal written notice, plaintiff had orally notified defendant surety company's agent of his discovery of a shortage. There was an issue of fact as to whether or not this notice was given within 15 days after October 26, and that issue was submitted to the jury.

It is plaintiff's contention that the 15 day period should not be binding, but that he could comply with the policy by giving notice a reasonable time thereafter, and the instruction should so have advised the jury. It is well settled that in fidelity insurance of this kind the notice and proof of loss must be given within the time limits fixed by the policy. American Bonding Co. of Baltimore v. Ballard County Bank's Assignee, 165 Ky. 63, 176 S.W. 368; Wilhoit v. Furnish, 295 Ky. 356, 174 S.W.2d 515, 149 A.L.R. 941. See additional cases cited in 23 A.L.R.2d 1071. The question of compliance with the time limit for giving notice of the loss was properly submitted to the jury. As we read the evidence, if the notice was given in time, the proof of loss was filed in time and the latter issue should not have been submitted. Since there may be another trial, if the evidence is substantially the same, only the issue with respect to notice of loss should be submitted to the jury.

–12–

Plaintiff raises other points which we do not think merit discussion.

Because of the errors discussed in 3, 4, 5, 6, 7 and 8, the judgment must be reversed.

The judgment is reversed for consistent proceedings.