Acting through an attorney, Judge Beth Lewis Maze[1] sent a letter to the Judicial Conduct Commission ("JCC") on November *207 12, 2017, in which she reported her own conduct. Based upon these facts, the JCC brought a five-count misconduct charge against her. While those misconduct charges were pending a final hearing before the JCC, a grand jury returned a criminal indictment against Judge Maze on November 1, 2018. The grand jury charged Judge Maze with two counts of second-degree forgery[2] and one count of tampering with public records.[3]
Two weeks after the return of the indictment, Judge Maze filed three motions in her JCC proceedings, and the JCC denied her requested relief on all of them. The JCC's denial of these motions is the subject of this appeal.
Before the JCC, Judge Maze first moved for a postponement of all further JCC proceedings until resolution of the criminal charges. Second, Judge Maze moved to postpone the December 3, 2018, JCC hearing, claiming insufficient time to prepare for the hearing because the JCC produced to her a voluminous amount of materials in discovery slightly less than a month before the scheduled JCC hearing. Third, Judge Maze asked for an informal conference with the JCC to address additional misconduct charges that were added after the initial charge.
After the denial of all three motions, Judge Maze filed in this Court a Kentucky Rules of Civil Procedure ("CR") 76.33 Motion for Intermediate Relief on November 28, 2018, asking us to stay the impending JCC hearing. And along with the CR 76.33 motion, Judge Maze filed a Notice of Appeal, in which she asked us to review the JCC's denial of her three motions. We granted Judge Maze's CR 76.33 motion, staying all JCC proceedings until we could address the merits of Judge Maze's appeal of the JCC's denial of her motions.
We find no error on the part of the JCC in denying Judge Maze's motion for a stay, and because her other challenges are either moot or procedurally infirm at this time, we affirm her appeal, in part, and order her appeal dismissed, in part.
I. ANALYSIS.
Section 121 of the Kentucky Constitution creates a commission to retire for disability, suspend without pay, or remove for good cause members of the state's judiciary. And this section mandates that the "actions" of the commission are subject to judicial review by this Court.[4] But more importantly, Section 121 gives this Court the rulemaking power over the commission's proceedings. In exercise of this rulemaking power, this Court has promulgated Kentucky Supreme Court Rules ("SCR") 4.000, et seq. SCR 4.010(a) designates the name of the commission as the Kentucky Judicial Conduct Commission.
SCR 4.290 outlines judicial review of JCC proceedings. SCR 4.290(2) provides, "A notice of appeal of the Commission's final order shall be filed with the Clerk of the Supreme Court within 10 days after service of notice of the order upon the judge."[5] Additionally, SCR 4.290(5) provides, "The Court shall have power to affirm, modify or set aside in whole or in part the order of the Commission[.]"[6] As such, SCR 4.290 contemplates that only after the final order of the JCC resolving all issues does this Court exercise direct appellate review over JCC proceedings.
*208 The language of SCR 4.290(1), which provides that the Kentucky Rules of Civil Procedure ("CR") shall apply to this Court's appellate review of JCC orders to the extent they are not inconsistent with SCR 4, further buttresses the point that we review only the final orders of the JCC. CR 54.01 provides, "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding[.]" "This Court has long held that appeals are allowed only from final judgments."[7]
The rules governing this Court's review of JCC proceedings only allow us to review the propriety of those proceedings upon submission of the JCC's final order resolving the proceedings.[8] Here though, the JCC proceedings are ongoing; nothing in Judge Maze's JCC proceedings has been finally adjudicated. And the three JCC rulings at issue in this direct appeal-denial of a stay, denial of a continuance, and denial of an additional informal hearing-are all interlocutory in nature and do not constitute immediately appealable final judgments.[9]
But the JCC only challenges the procedural ability of this Court to address the propriety of Judge Maze's argument regarding the JCC's denial of her motion for an additional informal hearing. The JCC argues that Judge Maze's challenge to the JCC's denial of her motion for an informal hearing is an impermissible issue for interlocutory review. The JCC is correct in this assertion, so we decline to review the propriety of the JCC's denial of Judge Maze's motion for an informal hearing.
Additionally, the JCC argues that this Court's grant of Judge Maze's CR 76.33 Motion for Intermediate Relief, which postponed the hearing scheduled for December 3, 2018, renders moot her challenge of the propriety of the JCC's denial of her motion to continue the December 3, 2018 hearing. The JCC is also correct in this assertion-this Court's granting of Judge Maze's CR 76.33 motion did, in fact, cancel the December 3, 2018 hearing.[10] So all that is left for our review is whether the JCC correctly denied Maze's motion for a stay.[11]
*209 "The civil and regulatory laws of [government] frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous."[12] In this case, Judge Maze's JCC proceedings and her criminal prosecution are pending at the same time. These parallel proceedings appear to involve the same conduct on the part of Judge Maze. Judge Maze sought by motion to halt the JCC proceedings until her criminal prosecution concludes, but the JCC denied the motion.
"In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence."[13] While "[t]he Constitution ... does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings[,] [n]evertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem ... to require such action, sometimes at the request of the prosecution, ... sometimes at the request of the defense[.]"[14] "The Court must make such determinations in the light of the particular circumstances of the case."[15]
A secondary source describes the benefits and drawbacks of parallel proceedings:
Parallel proceedings benefit the government in several ways.... These proceedings allow civil and criminal agencies to share information. Furthermore, the regulatory agency can use the criminal conviction of the defendant to dispose of the civil action.
Parallel proceedings can also benefit a defendant. The defendant may utilize a favorable outcome in the civil action to avoid criminal charges or to dismiss the criminal case. The defendant can use the liberal discovery rules of civil procedure to obtain information about the criminal case. However, parallel proceedings also pose problems for a defendant, such as invocation of his Fifth Amendment right against self-incrimination, the financial strain of defending two suits, and the use of evidence from the civil case in the criminal case.[16]
The D.C. Circuit Court of Appeals in Dresser offered a compelling analysis for when a court should defer a noncriminal proceeding occurring simultaneously with a defendant's criminal proceeding:
Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of [the Rules of Criminal Procedure], expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If *210 delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.... In some ... cases, however, the courts may adequately protect the government and the private party by merely deferring civil discovery or entering an appropriate protective order.[17]
"The burden is on the party seeking the stay to show 'pressing need for delay' and 'that neither the other party nor the public will suffer harm from entry of the order.' "[18] If a stay is granted, "[t]he stay must only be entered for a certain period of time and must not 'place [the] case in limbo for years.' "[19]
"While there is no precise test ... for determining when a stay is appropriate, ... courts commonly consider factors such as: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest."[20] "Moreover, the public interest in effective criminal prosecution generally outweighs any existing civil interests."[21] "In addition to those factors, ... courts 'should consider "the extent to which the defendant's fifth amendment rights are implicated." ' "[22] "The most important factor is the balance of the hardships, but '[t]he ... court must also consider whether granting the stay will further the interest in economical use of judicial time and resources.' "[23]
This Court has recently addressed the issue of parallel proceedings and adopted a strikingly similar test for determining whether civil proceedings should be stayed pending resolution of concurrent criminal proceedings.[24] In Lehmann, the defendant was alleged to have sexually abused young children.[25] About a month after the defendant was criminally indicted, the alleged victims filed a civil suit against the defendant.[26] In determining whether the civil proceedings should be stayed pending resolution of the criminal proceedings, this Court discussed the issue of parallel proceedings and how best to address it, using the following factors as "strong guidance: (1) the extent to which the evidentiary material in the civil and criminal cases overlap; (2) the status of the criminal proceeding; (3) the interests of any parties in *211 staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; [ (5) ] the interests of persons that are not parties to the litigation; [ (6) ] court convenience; and [ (7) ] the public interest in the pending civil and criminal actions."[27]
Although we deal here with parallel JCC and criminal prosecution whereas Lehmann dealt with parallel civil and criminal prosecution, the distinction is immaterial for applying the Lehmann factors as a helpful guide in determining whether Judge Maze's JCC proceedings should be deferred until resolution of her criminal prosecution as she has requested. In view of the important constitutional function assigned to the JCC of ensuring public trust and confidence in the integrity of the state's court system, we additionally note that the JCC's process demands a high degree of deference.
We recognize from the outset that the burden is upon Judge Maze to prove that her circumstances require that the JCC proceedings against her be deferred during her criminal prosecution. Unquestionably, the facts underlying the criminal prosecution appear to overlap with the facts underlying the misconduct charges against her in the JCC proceedings. So far in the criminal prosecution, Judge Maze has been indicted, arraigned on all charges, and pleaded not guilty. A pretrial conference is now set for September 17, 2019, and a trial date for November 12, 2019.
The JCC is the prosecuting party in the case before us. The JCC is the constitutionally created body solely responsible under state law for "the discipline, retirement or removal of justices of the Supreme Court and judges of the Court of Appeals, circuit court and district court under section 121 of the Constitution of Kentucky [,]"[28] "The purpose of Section 121 of our constitution is the regulation of the conduct of those persons charged with the administration of justice."[29] "The aim of [JCC] proceedings ... is to improve the quality of justice administered within the Commonwealth by examining specific complaints of judicial misconduct, determining their relation to a judge's fitness for office and correcting any deficiencies found by taking the least severe action necessary to remedy the situation."[30]
As of now, Judge Maze has been on paid suspension from her duties as circuit judge since October 2, 2018.
The JCC's interests in proceeding without impediment include: (1) maintaining the integrity of the state's judicial system by the faithful discharge of its constitutional mandate to regulate the conduct of persons responsible for the administration of justice in this Commonwealth; and (2) disposing expeditiously of all pending matters before the JCC within the time constraints imposed by SCR 4.000, et seq. The JCC's interests correspond with the public's interest in the prompt resolution of the misconduct charges against Judge Maze. The public's interest further demands: (1) minimizing disruption of routine court business to the citizens of the 21st Judicial Circuit and the Commonwealth; (2) reducing the additional expenditure of state funds for special judges deployed to the 21st Judicial Circuit to continue the work of the court while Judge Maze remains suspended; and (3) reducing length of time Judge Maze *212 receives a full judicial salary and benefits while incapable of performing any judicial duties.
Judge Maze argues that she will suffer increased difficulties because of the parallel criminal charges and disciplinary charges: (1) the quandary of asserting her Fifth Amendment right against self-incrimination and defending herself fully in both proceedings; (2) the financial strain of defending two suits; and (3) the overlap of evidence from the disciplinary proceeding allowing its use in the criminal case and vice versa. These difficulties are no greater for Judge Maze than for any judge confronting parallel disciplinary and criminal charges. And any financial burden on Judge Maze does not appear to increase if the JCC proceedings proceed without further delay.
It is difficult to ascribe great weight to Judge Maze's Fifth-Amendment and overlapping-evidence arguments considering the numerous voluntary and arguably incriminating statements she made in two self-reporting letters to the JCC and the arguably incriminating statements she made in a TV interview in August 2018. More importantly, we fail to see how Judge Maze's Fifth Amendment rights are even impinged upon in this case.
"The right against self-incrimination provides two types of protection in criminal proceedings: (1) a defendant cannot be compelled to testify, and (2) the factfinder cannot draw adverse inferences by the defendant's refusal to testify."[31] The JCC has not compelled Judge Maze to provide testimony in her defense that gives rise to statements that could be used against her, and even if it did, the trial court in her criminal proceeding could prevent any such compelled testimony from being used against her. Nor will the trial court in her criminal proceeding allow Judge's Maze's silence in her JCC proceedings to be used against her.
Understandably, Judge Maze wants to be able to defend herself in her JCC proceedings and prevent those statements from being used against her in any way in her criminal proceedings. "But the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.' "[32] "It is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free."[33] "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course [s]he chooses, the Constitution does not by that token always forbid requiring h[er] to choose."[34] "It does no violence to the privilege that a person's choice to testify in h[er] own behalf may open the door to otherwise inadmissible evidence which is damaging to h[er] case."[35]
*213 Judge Maze remains free to assert her Fifth Amendment right in both her JCC and criminal proceedings. Our decision today should not be taken to preclude her from doing so.
One of the dissents also suggests, "With the public fully protected, the JCC cannot constitutionally justify not awaiting the outcome of the criminal proceedings." If the JCC suspended Judge Maze without pay, then Justice Lambert's position would be strengthened. But with this statement, the dissent ignores the fact that the longer the JCC proceedings are stayed, the more taxpayer dollars will be paid to a non-working judge and the temporary judges who must fill her role.
One of the dissents additionally relies on this Court's decision in Cornett v. Judicial Ret. & Removal Comm'n[36] to support its argument that a stay on Judge Maze's JCC proceedings is warranted. But this Court's disposition in that case is the exact opposite disposition that the dissent advocates for: "The order of the Commission is reversed, and the cause remanded to the Commission so that it can either await the outcome of the federal appellate process or conduct an independent hearing and make its own findings of culpability and enter an appropriate order based on them. "[37] In other words, faced with this exact situation in Cornett , this Court allowed the JCC to proceed with its investigation and disposition.
In sum, the balance of equities in this case favors allowing the JCC to move ahead with its disciplinary proceedings. The overarching public interest in an expedited resolution of disciplinary proceedings against a sitting judge furthers the goal of maintaining the public's trust and confidence in the judiciary while, at the same time, minimizing expense and inconvenience to the public. These interests outweigh the burden of parallel proceedings suffered by Judge Maze. Upon full review of the record, we hold that the JCC did not err in denying Maze's motion for a stay.
Accordingly, the Court ORDERS:
1. The JCC's denial of Judge Maze's Motion to Stay is AFFIRMED.
2. Judge Maze's challenge to the JCC's denial of Judge Maze's Motion for a Continuance is DISMISSED as MOOT.
3. Judge Maze's challenge to the JCC's denial of Judge Maze's Motion for an Informal Hearing is DISMISSED.
All sitting. Minton, C.J.; Buckingham, Hughes, and VanMeter, JJ., concur. Keller, J. dissents by separate opinion which Lambert and Wright, JJ. join. Lambert, J., dissents by separate opinion, which Keller and Wright, JJ., join. Wright, J., dissents by separate opinion which Keller and Lambert, JJ., join.

Beth Lewis Maze is Judge of the 21st Judicial Circuit of Kentucky, Division No. 2.

Kentucky Revised Statutes ("KRS") 516.030.

KRS 519.060.

Ky. Const. § 121.

(emphasis added).

(emphasis added).

Cavalier Homes of Alabama v. Coleman, 181 S.W.3d 558, 559 (Ky. 2005) (citing CR 54.01 ; National Gypsum Company v. Corns, 736 S.W.2d 325 (Ky. 1987) ).

Indeed, a review of our case law reveals that we have only entertained appeals of JCC proceedings after the JCC has entered its final order disposing of the entire matter. See e.g., Gormley v. Judicial Conduct Comm'n, 332 S.W.3d 717, 720 (Ky. 2010) ; Alred v. Com., Judicial Conduct Comm'n, 395 S.W.3d 417, 423 (Ky. 2012) ; Kentucky Judicial Conduct Comm'n v. Woods , 25 S.W.3d 470, 471 (Ky. 2000).

See e.g., John Bourdeau, et al., American Jurisprudence, 4 Am. Jur. 2d Appellate Review § 146 (Feb. 2019 update) ("[A]n order granting or refusing a continuance, postponement, or adjournment of the trial or other proceeding involved in a state civil case is merely interlocutory in nature and nonappealable.") (internal citations omitted); Warpar Mfg. Co. v. Ashland Oil, Inc. , 606 F. Supp. 866, 867-68 (N.D. Ohio 1985) (denial of plaintiff's motion to have hearing not final appealable order).

"A 'moot case' is one which seeks to get a judgment ... upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." Morgan v. Getter , 441 S.W.3d 94, 98-99 (Ky. 2014) (quoting Benton v. Clay , 192 Ky. 497, 233 S.W. 1041, 1042 (1921) ) (emphasis in original).

Although we have concerns about the procedural validity of Judge Maze's appeal of this interlocutory order, we will nonetheless address the merits of her argument because no procedural challenge was made by the JCC on this point.

SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1374 (D.C. Cir. 1980) (internal citations omitted); see also White Collar Crime , 1 White Collar Crime § 7:1, Simultaneous or successive civil and criminal proceedings (July 2018 update) (internal citations omitted).

Dresser , 628 F.2d at 1374.

Dresser , 628 F.2d at 1374 (quoting United States v. Kordel , 397 U.S. 1, 12, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) ).

Dresser , 628 F.2d at 1374.

White Collar Crime, supra note 12 (citations omitted).

Dresser, 628 F.2d at 1376 (citations omitted).

SEC v. Abdallah , 313 F.R.D. 59, 64 (N.D. Ohio 2016) (quoting F.T.C. v. E.M.A. Nationwide, Inc. , 767 F.3d 611, 627-28 (6th Cir. 2014) ; Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div. , 565 F.2d 393, 396 (6th Cir. 1977) ).

Abdallah, 313 F.R.D. at 64 (quoting Ohio Envtl. Council, 565 F.2d at 396 ).

Abdallah, 313 F.R.D. at 64.

Id.

E.M.A. Nationwide, 767 F.3d at 627 (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) ; Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989) ).

E.M.A. Nationwide, 767 F.3d at 627 (internal citations omitted).

Lehmann v. Gibson, 482 S.W.3d 375 (Ky. 2016). One of the dissents suggests that we rely on Lehmann to support our holding. To the contrary, we only cite Lehmann for its helpful articulation of the rule regarding the staying of a civil proceeding occurring simultaneously with a criminal proceeding.

Id. at 379.

Id.

Id. at 384 (citations omitted).

Supreme Court Rule ("SCR") 4.000.

Nicholson v. Judicial Ret. & Removal Comm'n, 562 S.W.2d 306, 308 (Ky. 1978).

Id.

Barker v. Commonwealth, 379 S.W.3d 116, 124 (Ky. 2012) (citing Griffith v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) ).

Jenkins v. Anderson, 447 U.S. 231, 236, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (quoting Chaffin v. Stynchcombe , 412 U.S. 17, 30, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) ).

McKune v. Lile, 536 U.S. 24, 41, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (Kennedy, J., dissenting) (citing Jenkins , 447 U.S. at 238, 100 S.Ct. 2124 ; Williams v. Florida, 399 U.S. 78, 84-85, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) ).

McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (vacated on other grounds by Crampton v. Ohio, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972) ).

Id. (citing Spencer v. Texas, 385 U.S. 554, 561 n.7, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) ; Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ).

625 S.W.2d 564 (Ky. 1982).

Id. at 569 (emphasis added).