RENDERED: MAY 30, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0377-MR

GUY J. TURCOTTE                                                                 APPELLANT

v.

APPEAL FROM BARREN CIRCUIT COURT
HONORABLE JOHN T. ALEXANDER, JUDGE
ACTION NO. 23-CI-00437

CITY OF GLASGOW, KENTUCKY
AND CITY OF GLASGOW POLICE
DEPARTMENT                                                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Guy J. Turcotte ("Turcotte") appeals a March 14, 2024, order of the Barren Circuit Court affirming the termination of his employment with the City of Glasgow Police Department ("GPD"). Turcotte argues that his Fifth Amendment privilege against self-incrimination was given inadequate consideration when he was denied a continuance at the administrative hearing while a misdemeanor charge against him was pending. We affirm.

# BACKGROUND

On July 18, 2023, the Mayor of Glasgow, Kentucky, Henry Royse, presided over a hearing, held pursuant to KRS[1] 15.520, concerning disciplinary charges filed against Turcotte ("the administrative hearing"). The charges followed the GPD's investigation into sworn citizen complaints made by Brittany DeMars ("DeMars"), Bethany Hendrix, and Christine Vogel. All three complainants were employees of PetSense, a dog grooming business located in Glasgow. Each had filed the complaints following an occasion Turcotte had visited PetSense, on or about January 28, 2023. On that date, DeMars had been the employee tasked with grooming Turcotte's dogs and assisting him when picking the dogs back up. According to her complaint, Turcotte had put his arm around DeMars, placed his hand near her pubic region, and held her against him for a period of time without her consent. The complaints additionally described prior occasions Turcotte had behaved toward PetSense employees in an inappropriate and unprofessional manner.

Based on an investigation of the complaints, the Glasgow police chief had charged Turcotte with violations of GPD Policy No. 1.11 – Ethics, and Policy No. 12.1 – Code of Conduct. The immediate termination of Turcotte's employment with GPD was recommended. Turcotte was informed of the charges on May 4,

---

[1] Kentucky Revised Statutes.

-2-

2023, and placed on administrative leave without pay. Previously, on April 20, 2023, a criminal citation was issued charging Turcotte under KRS 525.070(1)(a) with Harassment (Physical Contact) No Injury, in Barren District Court.[2] The incident with DeMars was the subject of the criminal charge.

At the onset of the administrative hearing, Turcotte's counsel made a motion to hold the proceeding in abeyance until resolution of the criminal case. Counsel alleged that proceeding would implicate Turcotte's Fifth Amendment privilege against self-incrimination, of which he intended to avail himself, while criminal charges were pending. The GPD's counsel objected and argued proceeding with the disciplinary administrative action while a criminal charge was pending would not violate Turcotte's Fifth Amendment rights and cited to *Maze v. Kentucky Judicial Conduct Commission*, 575 S.W.3d 204 (Ky. 2019). Turcotte's request was denied and the hearing proceeded.

Aside from the issuance of the criminal citation, another parallel legal proceeding had commenced prior to the administrative hearing. In addition to filing the sworn complaint with GPD, DeMars had filed a petition for an interpersonal protective order ("IPO") in Barren Family Court on January 30, 2023. *See Turcotte v. B.E.D.*, No. 2023-CA-0244-ME, 2023 WL 4535774, at *1

---

[2] Turcotte's charge was assigned Barren District Case No. 23-M-00285 before being transferred to Monroe District Court as Case No. 24-M-00056. Turcotte was later acquitted of the charge following a jury trial.

(Ky. App. Jul. 14, 2023), *review denied* (Dec. 6, 2023). A hearing on the petition

("the IPO hearing") had occurred on February 8, 2023. *Id.* DeMars, who was not

represented by counsel, testified at the IPO hearing and was subject to cross-

examination by Turcotte's counsel. *Id.* Additionally, Turcotte testified in his own

defense. *Id.* On February 17, 2023, the court granted an IPO to DeMars for a

period of one year. *Id.* at *3. The IPO subjected Turcotte to certain restrictions,

including not coming within 500 feet of PetSense.

The Barren Family Court summarized its conclusions drawn from the

conflicting testimony between Turcotte and DeMars as follows:

> [DeMars] is 4'10" tall, and [Turcotte] is at least 6' tall.
> No matter which party's descriptions of the events is the
> truth, neither described hand placement by [Turcotte] on
> [DeMars] seems to be a "natural" placement of
> [Turcotte]'s hand on [DeMars] as she was standing up.
> Even if [Turcotte]'s description of these events leading
> up to the "hug" was accurate, it seems to this Court that
> [Turcotte] would have more naturally and easily placed
> his hand on [DeMars]'s shoulder or back for this "side
> hug"; but under no circumstances would such a "hug" in
> any way result in [Turcotte]'s hand being placed on or
> near [DeMars]'s upper thigh/groin area.
>
> . . . [Turcotte], upon cross-examination . . . agreed that he
> at no point asked for permission to touch her. He
> testified that he is just naturally a "touchy feely" person,
> and that people have asked him in the past not to touch
> them or not to hug them, but that [DeMars] did not do
> either of those. It is clear [Turcotte] presumes he can hug
> anyone, even if his familiarity with such person is based
> only upon a brief professional encounter, and [Turcotte]
> places the burden upon any recipient to stop him, as

opposed to seeking permission, even if the subject recipient is a professional actively engaged in his/her course of employment.

. . . The Court is more inclined to believe [DeMars]'s version of events. [DeMars] has no motivation to lie by accusing a local detective of sexual assault, especially considering the fact that doing such could create issues for herself within the community and possibly at her employment. [DeMars]'s testimony was consistent, and she expressed genuine fear of [Turcotte]. It is clear that [DeMars]'s fear is heightened because, as a law enforcement officer, [Turcotte] holds a position of trust and power within the community, which also allows him to carry a firearm in areas where she herself is not allowed to do so, such as her place of employment. In the text that [DeMars] sent to her manager [name deleted] later that evening on January 28th, entered as Defendant's Exhibit #1, [DeMars] expressed her fear that [Turcotte] would "retaliate or harass" her, and told [the manager] that she had been informed by police that the only "sure fire way" to prevent that was for [her manager] to ban [Turcotte] from the grooming shop. In the same text, [DeMars] said to [the manager] that the incident had caused her to be "a mess all day," and that [DeMars] "hoped" [the manager] was not "angry" with her. Furthermore, even if [Turcotte] really is just as "touchy feely" as he describes, with no "sexual motivation," the Court is not convinced that he would even be able to recognize or accurately recount if he acted inappropriately towards [DeMars] and/or violated her privacy. Accordingly, based on the totality of circumstances, the Court ultimately believes [DeMars]'s testimony to be factual.

2023 WL 4535774, at *4.

By the time of the administrative hearing before Mayor Royse, this

Court had already rendered its unpublished opinion affirming the IPO upon

-5-

Turcotte's appeal. *Id.* at *1. The findings and order of the Barren Family Court were entered into the record of the administrative proceeding. Mayor Royse cited to the family court's judgment as among the evidence which had been considered, finding "that the Barren Family Court decision serves as a benchmark upon which I have personally judged the weight and credibility of the evidence and testimony presented in this disciplinary hearing." (Written Findings and Decision of Appointing Authority, page 5.)

Turcotte did not attend the disciplinary hearing in person but was represented by counsel throughout the proceeding. Testimony was heard from the three PetSense employees who had filed the sworn complaints, as well as Glasgow police Captain Ashley Jones. Each was subject to extensive cross-examination by Turcotte's counsel. At the close of the testimony, Mayor Royse heard closing arguments on behalf of Turcotte and the GPD.

Written Findings and Decision of Appointing Authority ("administrative order") were issued on August 10, 2023. The administrative order found substantial evidence that Turcotte had violated both policies as charged and immediately terminated Turcotte's employment with GPD. Turcotte petitioned the Barren Circuit Court for review pursuant to KRS 15.520, on August 18, 2023. After briefing by the parties, the circuit court, on March 14, 2024, entered an

Opinion and Order ("circuit order") which affirmed the findings and decision set forth in the administrative order.

This appeal follows. Additional facts will be developed as necessary.

## ANALYSIS

On appeal, Turcotte's arguments focus solely on the denial of his motion for a continuance in the administrative proceeding and the circuit court's affirmation of the administrative order. Turcotte argues, primarily, that both Mayor Royse and the circuit court failed to give adequate weight to his Fifth Amendment privilege against self-incrimination or to the overlapping evidence between the parallel proceedings.

## STANDARD OF REVIEW

A circuit court's review of actions taken under KRS 15.520 has been described as "something less than a trial *de novo* – a *quasi* trial *de novo* as it were." *Stallins v. City of Madisonville*, 707 S.W.2d 349, 350 (Ky. App. 1986). "The trial court in its review is to consider both the transcript and the additional testimony and it is limited to a determination of whether the administrative body acted arbitrarily in deciding whether the employee violated the rules and regulations of the police department." *Id*.

On appeal from the circuit court, this Court is guided by the "clearly erroneous" standard set out in CR[3] 52.01. *Stallins*, 707 S.W.2d at 351. We are not to disturb the factual findings of the trial court unless they are not supported by substantial evidence. *Id.* (citations omitted). As with any appeal from a decision of an administrative agency, we review the trial court's application of the law to the facts *de novo*. *Howard v. City of Independence*, 199 S.W.3d 741, 743 (Ky. App. 2005) (citing *Reis v. Campbell County Board of Education*, 938 S.W.2d 880, 885-86 (Ky. 1996)).

Continuances are permitted "when the interests of justice seem . . . to require such action." *Maze*, 575 S.W.3d at 209 (quoting *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980)). When ruling on a motion for a continuance, trial courts generally have broad discretion and we will not interfere unless their discretion was clearly abused. *Stallard v. Witherspoon*, 306 S.W.2d 299, 300 (Ky. 1957); *see also Pope v. Commonwealth*, 629 S.W.3d 5, 13 (Ky. 2021). The decision as to whether to grant a continuance is a "situation-specific task" which requires examination of the "idiosyncratic circumstances of the case before it." *Lehmann v. Gibson*, 482 S.W.3d 375, 383-84 (Ky. 2016) (quoting *Minnesota v. Deal*, 740 N.W.2d 755, 765 (Minn. 2007)). A deciding

---

[3] Kentucky Rules of Civil Procedure.

court must weigh "the interests of litigants, nonparties, the public, and the court itself." *Id*. at 383.

### The circuit court did not err in its application of *Maze v. Kentucky Judicial Conduct Commission*.

Turcotte argues that "the Mayor misapplied the holding of *Maze*, and the Barren Circuit Court erred in affirming this misapplication." It is clear from both the administrative and circuit orders that *Maze* was prominently relied upon in deciding Turcotte's motion and initial appeal of the denial. We will accordingly begin our analysis with a review of that precedent. In *Maze*, a judge had self-reported to the Judicial Conduct Commission ("JCC") and subsequently faced disciplinary charges for professional misconduct before the administrative body. 575 S.W.3d at 207. Prior to a scheduled disciplinary hearing before the JCC, a criminal indictment had been returned against the judge. *Id*. Ostensibly, the same conduct was at issue in both parallel proceedings. *Id*. at 209. By motion, the judge sought to continue the disciplinary proceedings until the criminal prosecution had concluded; the JCC denied her motion. *Id*. at 207.

A majority of our Supreme Court affirmed the JCC's denial of the continuance. *Id*. at 213. The majority opinion held that, despite any distinctions between administrative disciplinary proceedings and civil lawsuits in relation to criminal prosecutions, the factors set forth in *Lehmann v. Gibson* served as a helpful guide in evaluating whether the judge's requested continuance should be

granted. *Maze*, 575 S.W.3d at 211 (citing *Lehmann*, 482 S.W.3d at 384). These factors to be considered are: (1) the overlap between the civil and criminal cases; (2) the status of the criminal proceeding; (3) the interests of any parties in staying the civil proceeding; (4) the prejudice to any parties from staying the civil proceeding; (5) the interests of any nonparties; (6) court convenience; and (7) the public interest in the pending civil and criminal actions. *Maze*, 575 S.W.3d at 210.

Turcotte does not challenge the appropriateness of utilizing the *Lehmann* factors as a guide for deciding whether to grant a continuance in a KRS 52.520 disciplinary proceeding. Rather, his argument is that the circuit court erred in failing to recognize the *Lehmann* factors clearly weighed in favor of granting a continuance. However, he does so in language which often tracks the *Maze* opinion very closely. For example, Turcotte argues in his brief that he "has suffered increased difficulties because of the parallel criminal charges and disciplinary charges, to include (1) the quandary of asserting his Fifth Amendment right against self-incrimination and defending himself fully in both proceedings; and (2) the overlap of evidence from the disciplinary preceding allowing its use in the criminal case and vice versa."

These are essentially verbatim reiterations of the very same arguments addressed by the majority of our Supreme Court in *Maze*:

> Judge Maze argues that she will suffer increased difficulties because of the parallel criminal charges and

-10-

disciplinary charges: (1) the quandary of asserting her Fifth Amendment right against self-incrimination and defending herself fully in both proceedings; . . . and (3) the overlap of evidence from the disciplinary proceeding allowing its use in the criminal case and vice versa. These difficulties are no greater for Judge Maze than for any judge confronting parallel disciplinary and criminal charges.

. . . More importantly, we fail to see how Judge Maze's Fifth Amendment rights are even impinged upon in this case.

"The right against self-incrimination provides two types of protection in criminal proceedings: (1) a defendant cannot be compelled to testify, and (2) the factfinder cannot draw adverse inferences by the defendant's refusal to testify." The JCC has not compelled Judge Maze to provide testimony in her defense that gives rise to statements that could be used against her, and even if it did, the trial court in her criminal proceeding could prevent any such compelled testimony from being used against her. Nor will the trial court in her criminal proceeding allow Judge[] Maze's silence in her JCC proceedings to be used against her.

Understandably, Judge Maze wants to be able to defend herself in her JCC proceedings and prevent those statements from being used against her in any way in her criminal proceedings. "But the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.' "It is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free." "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course [s]he chooses, the Constitution does not by that token always forbid requiring h[er] to choose." "It does no violence to the privilege that a person's choice to testify in h[er] own behalf may open

-11-

> the door to otherwise inadmissible evidence which is damaging to h[er] case."
>
> Judge Maze remains free to assert her Fifth Amendment right in both her JCC and criminal proceedings. Our decision today should not be taken to preclude her from doing so.

*Maze*, 575 S.W.3d at 212-13 (footnotes and citations omitted).

Turcotte primarily asserts that the City of Glasgow and the circuit court "failed to ascribe adequate weight to his constitutional protections under the Fifth Amendment." However, this Court has determined that "[p]arallel civil and criminal cases are permitted and may proceed simultaneously or sequentially" without offending either the United States Constitution or the Constitution of Kentucky. *Barnes v. Goodman Christian*, 626 S.W.3d 631, 637 (Ky. 2021). We note nothing in KRS 15.520 that requires a different analysis in a police disciplinary proceeding from that which has been found appropriate for a judicial disciplinary hearing in this respect. Accordingly, we discern no error in the circuit court's conclusion that Turcotte did not have a constitutional right to have the disciplinary hearing held in abeyance.

Moreover, we detect no indication that the circuit court or Mayor Royse failed to properly consider Turcotte's constitutional right against self-incrimination. The circuit court opinion affirming the administrative order contains extensive analysis addressing the same argument that Turcotte makes to

this Court. And the circuit court's analysis closely mirrors that utilized by the majority in *Maze*. *See* 575 S.W.3d at 212-13.

The circuit court noted that neither Mayor Royse or the GPD had sought to compel Turcotte's testimony, and the Mayor expressly indicated he had "in no way construed Officer Turcotte's absence at the hearing and his exercise of his constitutional right" against him. The circuit court noted that multiple witnesses testified and that each had been subject to cross-examination by Turcotte's counsel. The circuit court also noted that Turcotte was given the opportunity to present evidence in his defense before it concluded that Turcotte's right to remain silent was not violated. We discern no misapplication of *Maze* in the circuit court opinion but rather, a careful adherence to it.

Turcotte cites to *Maloney v. Gordon*, for the proposition that "[t]he similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay." *Maloney v. Gordon*, 328 F. Supp. 2d 508, 511 (D. Del. 2004). "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil action involving the same matter." *Id.* (internal quotation marks and citations omitted) (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003)). However, Turcotte's argument here is underdeveloped. Rather than

drawing any pertinent distinctions between his case and the factual scenario in *Maze*, Turcotte relies on restating arguments from the dissent of Justice Keller. *See* 575 S.W.3d at 213-216. While Turcotte repeatedly argues that the circuit court misapplied *Maze*, we fail to perceive how the facts of his case dictate a different result than the majority of our Supreme Court reached in that case. This Court is bound by the precedents established in the opinions of the Supreme Court and may not overrule the majority opinion. *See* SCR[4] 1.030(8)(a).

Turcotte's burden was to prove that the interests of justice required a continuance of the administrative matter during the pendency of a parallel criminal prosecution. *See Maze*, 575 S.W.3d at 209. This included a burden to explain "with particularity how his or her case will suffer if the motion to postpone is denied." *Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky. 2013).

### Overlapping evidence did not require a continuance of the administrative hearing.

While acknowledging the criminal charge was related to the January 2023 incident at PetSense, the circuit court also stated, "it is significant to note that the disciplinary action related to more than just the conduct alleged in the criminal complaint." Turcotte's behavior during a visit to PetSense on at least one prior occasion was of prominent significance to Royse's order. The administrative order

---

[4] Rules of the Kentucky Supreme Court.

found, during the course of multiple visits to PetSense, Turcotte had behaved and commented toward the three complainants in a manner that Royse found "to be chauvinistic and full of male bravado." (Administrative order, page 7.)

The administrative order additionally found that, on a prior occasion and while off-duty, in the fall of 2021, Turcotte visited PetSense and had "flashed his gun and badge while stating, 'It's okay, I'm a cop,' and continued to enter [a] restricted space" in an employee-only area in PetSense. After doing so, Turcotte had "invaded Christine Vogel's personal space, making her feel uncomfortable." The administrative order found this was an inappropriate use of Turcotte's official position for non-law enforcement purposes. This incident was not related to Turcotte's criminal charge but figured prominently in both the administrative and circuit orders.

Turcotte argues that the status of the criminal proceeding should have been considered and that the criminal matter was scheduled for trial, citing to *Lehmann v. Gibson*, 482 S.W.3d at 384. Turcotte's argument again closely tracks the dissent in *Maze*, at one point stating in his brief that a continuance would have delayed the administrative hearing for "only a few months." However, in his reply brief, Turcotte asserts that a jury trial on the misdemeanor charge occurred on September 27, 2024, more than a year after the administrative hearing.

Moreover, as the City points out, Turcotte made no assertion that the misdemeanor case was scheduled for trial when originally moving for a continuance. Only upon his appeal to the circuit court did Turcotte argue that his trial was scheduled for a date certain. A stay of a civil proceeding pending the outcome of parallel criminal proceedings must be entered only for a certain period of time and must not place the administrative timetable in limbo for years. *See Maze*, 575 S.W.3d 204 at 210 (citing *SEC v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016) (quoting *Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977))).

## Turcotte's acquittal in the misdemeanor case does not establish error by the circuit court.

Turcotte asserts in his reply brief that, on September 27, 2024, a jury returned a verdict finding him not guilty of harassment. This begs the question, Turcotte argues, "[w]ould Mayor Royse's decision have been different if he had known that a Monroe County jury had acquitted Turcotte?" However, such a possibility was explicitly considered by Royse in the administrative order: "[A]ssuming for argument's sake . . . Officer Turcotte is ultimately acquitted, his conduct *relative to this proceeding* still warrants disciplinary action in terms of his continued employment as a sworn law enforcement officer with the GPD." (Administrative order, Page 4-5) (emphasis added).

Turcotte's acquittal of the criminal charge for physical harassment does not establish any error by the circuit court in affirming Royse's denial of Turcotte's motion to hold the KRS 15 hearing in abeyance. Given the differing standards of proof at the criminal trial and the administrative hearing, Turcotte has failed to establish how an acquittal would have been relevant. *See Drummond v. Todd Cnty. Bd. of Educ.*, 349 S.W.3d 316, 323 (Ky. App. 2011) (citing *Shatz*, 295 S.W.2d at 814). To support a criminal conviction, the Commonwealth was required to prove beyond a reasonable doubt that Turcotte had committed the crime alleged. In the administrative hearing, however, the GPD was required to demonstrate that Turcotte had violated GPD policy only by a preponderance of the evidence. *See Fankhauser v. Cobb*, 163 S.W.3d 389, 403-04 (Ky. 2005).

Furthermore, long-standing precedent establishes that, rather than a proclamation of factual innocence, an acquittal in a criminal prosecution is "a negative finding that the Commonwealth did not sufficiently prove the commission of a crime." *Shatz v. American Sur. Co. of N.Y.*, 295 S.W.2d 809, 814 (Ky. 1955). "[I]n view of the difference in parties, procedures and degree of proof required; and the possibility that the prosecution may have been wholly inadequate; in the final analysis the verdict of acquittal is not such a fact as would constitute evidence of defendant's civil non-liability." *Id.*

The circuit court also found it significant that Turcotte had previously testified under oath in the IPO case in Barren Family Court involving some of the allegations. Royse had specifically reviewed that testimony as well as the opinion and order granting the IPO. The very fact of Turcotte having an active IPO order against him and the restrictions this placed upon performing his duties as a detective, as well as the issues related to public perception, were noted in the administrative order. The circuit court took judicial notice of the record of the Barren Family Court and Turcotte's appeal of the family court's decision to this Court, citing to KRE[5] 201(b) and *Rogers v. Commonwealth*, 366 S.W.3d 446 (Ky. 2012). Turcotte makes no challenge to this evidence being admitted in the disciplinary proceeding or to the conclusions drawn from it.

A majority of this Court, in affirming the IPO against Turcotte, found no error in the Barren Family Court's conclusion that Turcotte's actions toward DeMars were for the purpose of sexual gratification and that a sexual assault had occurred. *Turcotte*, 2023 WL 4535774, at *9. This prompted a dissenting opinion from Judge Allison Jones:

> Even taking every word the Appellee testified to as true, I do not believe there was sufficient evidence to demonstrate that the Appellant's actions toward her were done for the purpose of sexual gratification. This is not to say that they were appropriate; however, not all unwanted touching rises to the level of touching

---

[5] Kentucky Rules of Evidence.

-18-

undertaken to sexually gratify oneself or the other party. *There is certainly a difference between socially unacceptable behavior and sexually unacceptable behavior.*

2023 WL 4535774, at \*10 (Jones, A., J., dissenting) (emphasis added).

Reasonable persons might come to different conclusions as to Turcotte's behavior in terms of criminal culpability. This, however, is an entirely distinct inquiry from whether Turcotte violated the policy imposed by his department on its police officers. The administrative order noted that GPD policy required "maintaining the highest standard of integrity by never violating the community's trust." Far from being obligated merely to refrain from committing crimes, the administrative order noted that "[p]olice officers are held to a higher standard than the private citizen because, in addition to representing the GPD, the officer also represents the law enforcement profession and his or her local government."

Turcotte asserts that neither party would have been prejudiced by staying the administrative hearing against Turcotte. However, the circuit court found that the administrative order had properly recognized the valid public interest "in bringing this administrative matter to a conclusion notwithstanding the pending criminal charges." This is consistent with what *Maze* identified as an "overarching public interest in an expedited resolution of disciplinary proceedings against a sitting judge furthers the goal of maintaining the public's trust and

-19-

confidence in the judiciary" that outweighed the burden of parallel proceedings suffered by the judge. 575 S.W.3d at 213. Much like the public interest with regards to the judiciary discussed in *Maze*, prompt resolution of disciplinary proceedings against a police officer serves the valid public interest of maintaining the community's trust and confidence in its police force. *Id.*

Turcotte argues the public was "fully protected . . . especially because Turcotte has been suspended without pay throughout." While not specifically noted as such by Turcotte, this is a factual distinction from *Maze*, where the judge had been placed on leave with pay. 575 S.W.3d at 213. The majority in *Maze* noted the extension of the judge's ongoing suspension with pay resulted in prejudice to the public as "the longer the JCC proceedings are stayed, the more taxpayer dollars will be paid to a non-working judge and the temporary judges who must fill her role." *Id.* Nevertheless, the majority also recognized the JCC had dual interests in "maintaining the integrity of the state's judicial system . . ." as well as "disposing expeditiously of all pending matters . . . ." *Id.* at 211. Furthermore, "[t]he JCC's interests correspond with the public's interest in the prompt resolution of the misconduct charges against Judge Maze." *Id.* Recently, our Supreme Court reviewed a former police officer's claim his administrative due process rights under KRS 67C.325 were violated after his termination was upheld by a merit board. *Louisville/Jefferson Cnty. Metro. Gov't v. Moore*, 701 S.W.3d

-20-

335 (Ky. 2024). Regarding the public's interest in that context, the Court recognized "[c]ertainly, the quick removal of an unsatisfactory police officer, whose duty it is to uphold and enforce laws, is vital." *Id.* at 351. Accordingly, we cannot say the circuit court abused its discretion in affirming the administrative order terminating Turcotte's employment.

## CONCLUSION

Having addressed Turcotte's arguments and finding no reversible error, we AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Matthew J. Baker
Bowling Green, Kentucky

BRIEF FOR APPELLEES:

Ian A. Loos
Bowling Green, Kentucky